IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| ELWOOD JOHNSON, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>)<br>CARRINGTON MORTGAGE )<br>SERVICES, LLC )<br>)<br>Defendant. ) | Civil Action No: |

## COMPLAINT

Plaintiff Elwood Johnson ("Plaintiff"), by and through counsel, brings this Complaint against Defendant Carrington Mortgage Services, LLC. ("Defendant" "Carrington") on the grounds and in the amounts set forth herein:

## Preliminary Statement

1. Carrington took over mortgage servicing duties from Wells Fargo Mortgage for Mr. Johnson's home mortgage. At the time that it accepted those duties and responsibilities, it knew that Mr. Johnson was in a Chapter 11 bankruptcy plan and was making payments in accordance with said plan. Based upon its credit reporting at the time and its correspondence with Mr. Johnson, there was never any confusion about the status of his account and the bankruptcy. Rather than accurately report this account as being paid in accordance with the bankruptcy, Carrington reported it as both in Chapter 11 bankruptcy (CII code B) as well as 180 days or more past due (Account Status code of 84) as of July 2021 with a past due balance of $130,230. A furnisher cannot report conflicting information about a trade line, yet Carrington did and caused the CRAs to report that the account was currently 180 days past due rather than in Chapter 11 bankruptcy and being paid in accordance with the plan. After he discovered the erroneous credit reporting by

Carrington, Mr. Johnson disputed that information with the CRAs. They, in exchange, sent ACDVs to Carrington notifying it that the account was being disputed as reporting inaccurately and that Carrington should check how it was reporting the Account Status and "Verify Account Status." At that point, the ACDV processors for Carrington had a duty to check the account data and particularly the Account Status. Rather than deal with the conflicting data of a CII code of "B" and an Account Status code of 84, the Carrington ACDV processors continued to verify both as being accurate. This was not just one processor that did this, but two different ones that verified the same improper and conflicting data back to the CRAs. As a result, the CRAs continued to report this account inaccurately causing Mr. Johnson great harm and distress. Mr. Johnson had located a lender that would refinance his home mortgage, but in order to obtain approval of the loan, he had to correct the inaccurate and inconsistent information on his credit report. With a mortgage lender reporting him 180 days past due in July 2021, there was no chance he could be approved for a refinance in October 2021. Accordingly, Mr. Johnson requests an award of actual damages, statutory damages, punitive damages, attorney's fees and costs based upon Carrington's violations of the Fair Credit Reporting Act 15 U.S.C. §1681 *et. seq.* based upon its failure to investigate properly and correct the disputed Carrington account on his credit report.

## Parties

2. Plaintiff Elwood Johnson is a "person" and "consumer" as defined by the FCRA at 15 U.S.C. §1681a(b) and (c) because he is an individual. Unless otherwise specifically stated herein, the term "Plaintiff" shall refer to Elwood Johnson.

3. Carrington Mortgage Services, LLC is a non-bank mortgage servicer headquartered in Anaheim, California that operates in all 50 states and services a large number of mortgages. Carrington Mortgage Services, LLC ("Carrington") is a furnisher of information as contemplated by FCRA section 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer. Carrington regularly conducts these business activities in the Eastern District of Virginia by providing credit file data concerning consumers and businesses in the Alexandria division of the Eastern District of Virginia.

## Jurisdiction & Venue

4. This court has jurisdiction pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681(p). Venue is proper in this jurisdiction because Carrington conducted negligent and reckless investigations of Mr. Johnson's account that caused him damage in Virginia and this district.

## Factual Allegations

5. Mr. Johnson wanted to build his dream house, but he has suffered through a multi-year-long ordeal related to problems with contractors building the home that forced a Chapter 11 bankruptcy filing. After Mr. Johnson filed Chapter 11 bankruptcy and had a confirmed bankruptcy plan through the bankruptcy court, he started suffering the effects of inaccurate credit reporting related to various accounts. In this case, Carrington Mortgage failed to comply with the requirements under the FCRA for reasonably reinvestigating credit disputes that it received from credit reporting agencies. Carrington reported inaccurate information to the credit reporting agencies, which forced Mr. Johnson to file

credit disputes. At the time that Carrington investigated the ACDVs at issue in this action, Carrington had notice of all the facts and circumstances related to his mortgage account to investigate the disputes and thereafter report accurate credit information. Unfortunately for Mr. Johnson, Carrington did not reasonably investigate any ACDV or the credit file data that it was providing to the three major CRAs. Moreover, it appears that Carrington has failed in its main duty as a servicer: to properly allocate payments made in accordance with the underlying contractual documents and confirmed bankruptcy plan. As a result, Carrington has not only reported false information on ACDV responses that failed to credit report properly the Chapter 11 bankruptcy, but Plaintiff believes that Carrington has also misstated the balances owed and is believed to have alleged inaccurate past due balances incurred on the loan since it began servicing the loan.

6. When Carrington accepted servicing of the loan, the account notes and account level documentation clearly indicated that the account was part of a Chapter 11 bankruptcy proceeding. In addition, Carrington either knew or recklessly disregarded that it was receiving and posting loan payments pursuant to a bankruptcy plan when it started servicing the loan. In any event, by the time that Carrington initiated credit reporting with the credit reporting agencies, Carrington never reported the prior payment history, that the account was included in a Chapter 11 Bankruptcy, and Carrington affirmatively reported inaccurate credit information that the account was over 90 days past due in the amount of $129,916.

7. On April 1, 2021, Wells Fargo claimed that it issued a notice of servicing transfer to Mr. Johnson and his wife for the mortgage that is at issue in this action. The

letter stated that the servicing of the loan would transfer from Wells Fargo Home Mortgage to Carrington Mortgage Services, LLC as of April 21, 2021.

8. On May 6, 2021, Carrington Mortgage wrote a letter to Mr. Johnson and Mrs. Johnson, who was also on the account. In this letter, Carrington acknowledged that it knew that the mortgage interest rate was an adjustable rate mortgage. In the letter, Carrington stated that the mortgage interest rate from October 1, 2020 to the next date of interest rate adjustment (October 2021) would be 2.50%. Discovery is necessary as to whether Carrington actually charged this interest rate when it began servicing the loan and applying payments that were tendered.

9. On May 24, 2021, Mr. Johnson sent a Qualified Written Request to Carrington. The letter detailed various issues with the servicing of the loan as Mr. Johnson felt that the total balance that Carrington alleged was not accurate. Mr. Johnson placed Carrington on notice that payments were being paid pursuant to a confirmed bankruptcy plan, how he understood that payments should be applied, and how he felt that the total balance was overstated. Mr. Johnson also told Carrington that construction was on-going and that the property was in good condition.

10. On June 21, 2021, Carrington prepared a Monthly Mortgage Statement for Mr. Johnson's loan in which it stated: "Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage in bankruptcy."

11. On July 7, 2021, Carrington sent a letter to Mr. Johnson related to his QWR. In this letter, Carrington acknowledged that the account was included in bankruptcy, but it identified the wrong Chapter as the letter stated this was a Chapter 13 when it was a Chapter 11 bankruptcy. Carrington stated that the total debt balance for the loan was $797,525.43

and the unpaid principal balance was $705,005.24. Carrington claimed that the total balance owed was correct. However, information that Carrington later produced pursuant to a subpoena indicates that Carrington charged interest on the unpaid principal balance at 4.00%. Accordingly, Plaintiff believes that all representations about balances owed and past due balances are inaccurate and/or misleading because Carrington appears to be charging a higher interest rate than what it has disclosed in the letters and what the terms of the contract allow.

12. On September 7, 2021, Carrington wrote another letter to Mr. and Mrs. Johnson regarding the interest rate on the account. In this letter, Carrington once again noted that the mortgage was an adjustable-rate mortgage and that the new interest rate as of October 1, 2021 would be 1.875% until the next change date (October 2022). Discovery is necessary as to whether Carrington actually charged Mr. Johnson this interest rate when it allocated payments to the account.

13. On September 9, 2021, Mr. Johnson disputed Experian's reporting of the Carrington Mortgage account. Experian issued an ACDV that said "Account included in bankruptcy. Verify Consumer Information Indicator, Account Status, History and amounts." In addition, the ACDV included additional relevant information that stated, "JULY 2021 LATE PAYMENT IS INCORRECT. NEVER LATE ON PAYMENTS TO THIS CREDITOR. ACCOUNT TRANSFERRED FROM WELLS FARGO HOME MORTGAGE. DAYS LATE IS DOUBLE JEOPARDY. BANKRUPTCY NOT DISCHARGED NOR DISMISSED." Based upon the account level data available, Carrington knew that the account was in bankruptcy, being paid pursuant to a confirmed bankruptcy plan, and that all the payments had been tendered pursuant to the plan.

14. On September 29, 2021, Heleny Pena responded to the ACDV that Experian issued. The ACDV response was inaccurate because it included a current account status code of "84" which meant that the account was 180 days or more past the due date. This was an invalid response and totally contradicted the fact that the account was being paid pursuant to the confirmed bankruptcy plan. Carrington's reporting of this 84 Account Status Metro 2 Code overrode the consumer information indicator of "B" which acknowledged that the account was a included in a Chapter 11 bankruptcy. Only a negligent and/or reckless response would allow an ACDV response back from a furnisher like Carrington to include contradictory and conflicting account data. In addition, Carrington reported that the balance was $774,879 with a past due balance of $130,230, which Plaintiff alleges is inaccurate and/or misleading based upon the what the proper rate of interest should have been charged on the loan.

15. In October 2021, Mr. Johnson issued credit dispute letters to the national credit reporting agencies about accounts that reported inaccurately on his credit file including the transferred mortgage with Carrington Mortgage Services. After taking the transfer of the mortgage, Carrington did not report accurate and consistent account data. Specifically, Mr. Johnson noted in his dispute letter that, "Carrington Mortgage assumed servicing of the mortgage that is in bankruptcy, and it is still being paid as part of the Chapter 11 bankruptcy re-organization plan. You are reporting me 180 days past due for payments in July 2021 and August 2021 with a notation that I am $130,230 past due for August 2021, This is inaccurate reporting, and you should not report any late payments with Carrington Mortgage." Based upon information and belief, the credit reporting

agencies attached a full copy of Mr. Johnson's credit dispute letter to the ACDVs that Carrington received.

16. On October 12, 2021, TransUnion issued an ACDV to Carrington that included notification that Mr. Johnson disputed the reporting for the account. TransUnion attached an image to the ACDV, which is believed to be a copy of the credit dispute letter that detailed the information related to the Chapter 11 bankruptcy and Carrington's inaccurate and misleading credit reporting. Trans Union also instructed Carrington to verify the consumer information indicator and account status as part of the ACDV response.

17. On October 25, 2021, Amanda Hicks responded to the TransUnion ACDV. Ms. Hicks reported that the account status as "84" which meant that the account was 180 days past due with $129,316 past due. Just as occurred on the previous ACDV, Ms. Hicks acknowledged the Chapter 11 bankruptcy by including a "B" in the consumer information indicator (CII) field on the ACDV response. In all likelihood, the fact that two different ACDV processors would combine an account code of 84 with a CII of B, suggest that they were not properly trained on how to report accounts included in a Chapter 11 bankruptcy.

18. Experian had also issued an ACDV to Carrington that attached Mr. Johnson's October 2021 dispute letter. Experian instructed Carrington to investigate the account status and history. Just as occurred with the TransUnion ACDV response, Amanda Hicks responded on October 25, 2021, with an ACDV response that included an 84 account status Metro 2 Code that continued to report the account 180 days past due for October 2021. Ms. Hicks' repeat response indicates that she clearly intended to combine the 84

code with the CII of B and the previous ACDV response was not an accident or inadvertent mistake. Ms. Hicks once again acknowledged the Chapter 11 bankruptcy because she included the "B" code on the consumer information indicator code for the account. As with the other responses, this was a negligent and reckless response based on the circumstances related to the Chapter 11 bankruptcy. In addition, the ACDV response states that $129,316 was past due with a balance of $771,586.00.

19. Carrington's ACDV responses were instrumental in Mr. Johnson's inability to obtain a new mortgage with Flagstar mortgage in October 2021. Mr. Johnson self-reported that he was in a Chapter 11 bankruptcy to Flagstar, and he specifically looked for them as a lender that could assist him with his specific situation of being in a Chapter 11 bankruptcy plan and needing additional funds to complete the construction of his property. The attempted loan would have refinanced the Carrington Mortgage with enough additional funds to finish the property. This was exactly the process that the confirmed bankruptcy plan described. Unfortunately for Mr. Johnson, Carrington did not report that the account was included in bankruptcy and inaccurately reported that the account was over 90 days late for July, August, and September 2021. This had a substantial effect on his ability to get the loan because the recent derogatory information of 90 days late when he had timely tendered those payments under the plan, lowered his FICO score and made it look like he did not perform under the bankruptcy plan. This had a dual negative impact on his Flagstar Bank mortgage application. Accordingly, Carrington's failure to respond properly to the ACDVs had a substantial effect on his ability to obtain a new mortgage on the property to end his nightmare.

# COUNT I
## Fair Credit Reporting Act
## 15 U.S.C. §1681 s-2(b)

20. Plaintiff incorporates paragraphs one (1) through nineteen (19) as if fully stated herein.

21. Carrington both negligently and intentionally violated the Fair Credit Reporting Act at 15 U.S.C. §1681s-2(b) by failing to conduct reasonable investigations with respect to the disputes that it received as part of the ACDVs that have been previously identified in the facts.

22. As described in the factual averments, Carrington received multiple ACDVs from the national credit reporting agencies in accordance with their duties to notify Carrington of Mr. Johnson's credit reporting disputes. Carrington ignored the information provided in the ACDVs, the images attached, the Court's December 2020 bankruptcy order, and the industry standards related to accounts that were in bankruptcy. Carrington recklessly and negligently reported an account status code of 84 to credit report the account as seriously delinquent for the months July 2021, August 2021, and September 2021 when it knew that the account was included in the Plaintiff's Chapter 11 bankruptcy. Carrington is also believed to have reported inaccurate past due balances and total balances owed when it responded to the various ACDVs identified in the factual averments.

23. The FCRA imposes many duties upon a furnisher of credit information after it receives a notice of dispute from a consumer reporting agency. *See* 15 U.S.C. §1681 s-2(b). Carrington has violated multiple provisions of this provision.

24. Carrington has violated 15 U.S.C. §1681 s-2(b)(1)(A) because it failed to conduct a reasonable investigation of the information disputed by Mr. Johnson when it

received each of the ACDVs identified in the factual averments. Only a negligent and/or reckless investigation would ignore the information in the account level data that Mr. Johnson was paying the account in accordance with a confirmed bankruptcy plan and thereafter report an account status code of "84" for the months that Mr. Johnson paid according to that plan.

25. Carrington has violated 15 U.S.C. §1681 s-2(b)(1)(B) because it failed to reasonably review all of the relevant information provided by the consumer reporting agency as part of the ACDV responses identified in the factual averments because it ignored the information that was included in the letter attached to the ACDV and thereafter reported inaccurate and misleading information that did not include that payments were being made pursuant to a confirmed bankruptcy plan and that the account was not 180 days past due for the months of July, August and September 2021 because those months were timely paid pursuant to the bankruptcy plan.

26. Carrington has violated 15 U.S.C. §1681 s-2(b)(1)(E) because it did not modify the inaccurate and misleading information that it reported about Mr. Johnson to the credit reporting agencies because it failed to report properly that the account was paid pursuant to a confirmed Chapter 11 bankruptcy plan and report accurate and non-misleading information that was in accordance with available account level documentation.

27. Carrington recklessly and negligently failed to train its processors to understand and appreciate the interconnectedness between a CII code that indicates that the account is included in a bankruptcy and an 84 code that indicates that the account is 180 days or more past the due date. Basic instincts and logic would guide someone to

understand that if an account is being paid in accordance with an approved bankruptcy plan that it cannot be 180 days or more past due for that specific month and account status code.

28. Punitive damages are warranted pursuant to the facts of this matter because Carrington has ignored the clear instruction and long-standing precedent that a reasonable furnisher investigation under the FCRA requires a systemic inquiry and not just a cursory examination of computer records as occurred in all of the "investigations" in this case. *See Johnson v. MBNA, Inc.* 357 F.3d 426, 430-431 (4th Cir. 2004) *stating* "Thus, the plain meaning of 'investigation' clearly requires some degree of careful inquiry by creditors. Further, § 1681s-2(b)(1)(A) uses the term 'investigation' in the context of articulating a creditor's duties in the consumer dispute process outlined by the FCRA. It would make little sense to conclude that, in creating a system intended to give consumers a means to dispute - and, ultimately, correct - inaccurate information on their credit reports, Congress used the term 'investigation' to include superficial, *unreasonable* inquiries by creditors." Given the facts of this matter, Carrington disregarded even a cursory review of its own records let alone the detailed systematic approach required for proper FCRA investigations. Discovery is necessary as to the size and scope of the FCRA investigation department at Carrington as well as whether any animus was directed at Mr. Johnson.

29. Punitive damages are also warranted because Carrington refused to process the disputes by reviewing what had transpired previously in the numerous communications from Mr. Johnson, the bankruptcy court, and documents provided by the credit reporting agencies. As the Fourth Circuit noted processing each dispute request independently without consulting prior correspondence supports a punitive damages award. *See Daugherty v. Ocwen Loan Servicing, LLC*, 2017 U.S. App. LEXIS 13521, *20-21 (4th Cir.

2017), *stating*, "A jury also could conclude from the evidence that Ocwen was reckless in processing each dispute verification request independently, without consulting the context of prior correspondence from Daugherty, the CFPB, or Equifax regarding the same account."

30. Mr. Johnson is entitled to actual damages, statutory damages, and punitive damages based upon the violations of the Fair Credit Reporting Act. Mr. Johnson suffered damages in the form of the loss of time working to correct the reporting of the inaccurate accounts, loss of access to credit, loss of financial independence, interference with normal and usual activities, frustration and aggravation of dealing with problems related to the Carrington account as well as all attorney's fees and costs.

### **Prayer for Relief**

Wherefore, the plaintiff prays that the Court award the following relief:

a) compensatory damages against Defendant;

b) punitive damages based upon Defendant's repeated and reckless violations of the FCRA;

c) statutory damages against Defendant based upon multiple violations of the FCRA;

d) interest, pre-judgment interest, costs and reasonable attorneys' fees incurred by the Plaintiff;

e) all other further relief that this Court deems just and proper.

### **DEMAND FOR TRIAL BY JURY**

Plaintiff demands trial by jury as to all issues against the defendant.

Respectfully submitted<br>
Elwood Johnson

_____
By: Counsel

A. Hugo Blankingship, III, VSB 26424
Thomas B. Christiano, VSB 43940
Blankingship & Christiano, P.C.
11862 Sunrise Valley Drive, Suite 201
Reston, Virginia 20191
(571) 313-0412
(571) 313-0582